

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

| | | |
|---|---|---|
| D-1, | DERRICK TARON WHITE, |
| D-2, | LESHOUN DEANDRE BYRD, |
| D-3, | GREGORY A. JOHNSON, |
| D-4, | JIMMY JOSEPH McWHERTER, |
| D-5, | NICHOLAS SCOTT HALE, |
| D-6, | TASHUN YVONNE WHITE, |
| D-7, | KRISTIE McWHERTER, |

           Defendants.

_____/

Case:5:15-cr-20040
Judge: Levy, Judith E.
MJ: Stafford, Elizabeth A.
Filed: 01-27-2015 At 04:45 PM
IND. USA V. SEALED MATTER (SO)

Vios.: 21 U.S.C. § 841(a)(1)
      21 U.S.C. § 841(b)(1)(A)(vii)
      21 U.S.C. § 846
      18 U.S.C. § 1956(a)(1)(A)(i)
      18 U.S.C. § 1956(a)(1)(B)(I)
      18 U.S.C. § 1957
      18 U.S.C. § 2

## INDICTMENT

THE GRAND JURY CHARGES:

**COUNT ONE**
**(21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 846 –**
Conspiracy to Possess with Intent to Distribute and
Distribute a Controlled Substance)

D-1,  DERRICK TARON WHITE
D-2,  LESHOUN DEANDRE BYRD
D-3,  GREGORY A. JOHNSON
D-4,  JIMMY JOSEPH McWHERTER
D-5,  NICHOLAS SCOTT HALE

Beginning in or about June 2006 and continuing through the date of

this Indictment, in the Eastern District of Michigan, Southern Division, and

elsewhere, Defendants DERRICK TARON WHITE, LESHOUN DEANDRE

BYRD, GREGORY A. JOHNSON, JIMMY JOSEPH McWHERTER, and

NICHOLAS SCOTT HALE, together with others known and unknown to the

Grand Jury, did knowingly, intentionally and unlawfully conspire, confederate and

agree to commit an offense against the United States, that is, to possess with the

intent to distribute and distribute a controlled substance, specifically, 1000

kilograms or more of a mixture or substance containing a detectable amount of

marijuana, which is a schedule I controlled substance, all in violation of Title 21,

2

United States Code, Sections 841(a)(1) and 846.

1.   As part of the conspiracy, by mid to late 2006, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, and others, had established a drug-trafficking organization that was distributing and selling multi-kilogram quantities of marijuana in the metropolitan area of Detroit, Michigan.

2.   As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, and others, made arrangements to have large amounts of United States' currency that was derived from the distribution and sale of marijuana in the Detroit metropolitan area, and elsewhere, transported to Phoenix, Arizona, and elsewhere, for the purpose of purchasing more marijuana.

3.   As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT HALE, and others, used currency derived from the sale of marijuana to purchase and lease luxury automobiles, and to acquire real property.

4.   As a further part of the conspiracy, the WHITE organization utilized boats, trucks, trailers and recreational vehicles to transport large quantities of

3

marijuana, as well as cash generated from the sale of marijuana.

5.     More specifically, as a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT HALE, and others, utilized boats, trucks, trailers and recreational vehicles, some of which were equipped with traps and hidden compartments, to conceal the marijuana that was being transported for distribution and sale.

6.     Likewise, as a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT HALE, and others, utilized boats, trucks, trailers and recreational vehicles, some of which were equipped with traps and hidden compartments, to conceal cash generated from the organization's distribution and sale of marijuana, which was being transported to pay for the purchase of additional marijuana and to pay co-conspirators for participating in the conspiracy.

7.     On at least one such occasion during the existence of the conspiracy, more particularly, on or about February 3, 2010, law enforcement officials stopped

4

two vehicles traveling in tandem, specifically, a motor home recreational vehicle

driven by JIMMY JOSEPH McWHERTER and a pick-up truck driven by

NICHOLAS SCOTT HALE that had an attached trailer, and during subsequent

searches conducted on that day and others, seized more than 1,300 kilograms of

marijuana from concealed compartments within the motor home and trailer, all of

which marijuana had been intended for distribution by the WHITE organization.

Again, all in violation of Title 21, United States Code, Sections

841(a)(1) and 846.

### COUNT TWO
(21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii); 18 U.S.C. § 2 – Possession
with Intent to Distribute a Controlled Substance; Aiding and Abetting)

D-1,   DERRICK TARON WHITE
D-2,   LESHOUN DEANDRE BYRD
D-4,   JIMMY JOSEPH McWHERTER
D-5,   NICHOLAS SCOTT HALE

On or about February 3, 2010, in the Eastern District of Michigan,

Southern Division, Defendants DERRICK TARON WHITE, LESHOUN

DEANDRE BYRD, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT

HALE, and others, did knowingly, intentionally and unlawfully possess, with the

5

intention to distribute, a controlled substance, specifically, 1000 kilograms or more

of a mixture or substance containing a detectable amount of marijuana, which is a

schedule I controlled substance, and did aid and abet each other, and others, in said

possession, all in violation of Title 21, United States Code, Section 841(a)(1) and

841(b)(1)(A)(vii), and Title 18, United States Code, Section 2.

COUNT THREE

(18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)-(ii), 1957)
– Conspiracy to Launder Monetary Instruments

D-1,   DERRICK TARON WHITE
D-2,   LESHOUN DEANDRE BYRD
D-3,   GREGORY A. JOHNSON
D-4,   JIMMY JOSEPH McWHERTER
D-5,   NICHOLAS SCOTT HALE
D-6,   TASHUN YVONNE WHITE
D-7,   KRISTIE McWHERTER

The allegations set forth in Count One of this Indictment are hereby

incorporated by reference.

In or about June 2006, and continuing through the date of this

Indictment, in the Eastern District of Michigan, and elsewhere, Defendants

DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, JIMMY JOSEPH

McWHERTER, NICHOLAS SCOTT HALE, GREGORY A. JOHNSON,

TASHUN YVONNE WHITE and KRISTIE McWHERTER, knowing that the

property involved represented the proceeds of some form of unlawful activity, that

6

is, the proceeds of activity which constitutes a felony under State, Federal, or

Foreign law, including, specifically, proceeds from the distribution of marijuana,

which is a felony under Title 21, United States Code, Section 841(a)(1), did

knowingly, intentionally and unlawfully combine, conspire, confederate and agree

with each other, and with others both known and unknown to the Grand Jury, to do

the following:

*1)*     conduct and/or cause to be conducted one or more "financial transactions"

   involving the proceeds of said unlawful activity, with intent to,

   *a)* promote the carrying on of said unlawful activity; and/or,

   *b)* conceal and disguise the nature, location, source, ownership and control of

      the proceeds of the said unlawful activity; and/or,

   *c)* avoid transaction reporting requirements under federal law; and/or,

*2)*     conduct and/or cause to be conducted one or more "monetary transactions"

   which involve proceeds of said unlawful activity in an amount greater than

   $10,000.00,

all in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i),

1956(a)(1)(B)(i)-(ii), and 1957.

   1.     As part of the conspiracy, DERRICK TARON WHITE, LESHOUN

DEANDRE BYRD, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT

HALE, GREGORY A. JOHNSON, and other co-conspirators would and did operate a substantial drug-trafficking organization that obtained large quantities of marijuana in the metropolitan Phoenix, Arizona area, and elsewhere, which the organization then possessed and transported to metropolitan Detroit, Michigan, for distribution.

2.   As a further part of the conspiracy, at the direction of DERRICK TARON WHITE and LESHOUN DEANDRE BYRD, on numerous occasions during the conspiracy, JIMMY JOSEPH McWHERTER and NICHOLAS SCOTT HALE transported large, black garbage bags containing United States' currency from metropolitan Detroit, Michigan, to the metropolitan area of Phoenix, Arizona, where the currency was then retrieved by DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, and others, and knowingly used to pay for large quantities of marijuana.

3.   As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, and others, utilized nominee purchasers to acquire, lease, and purchase real property, to purchase luxury vehicles, and to conduct related financial transactions, while concealing the true source, nature and ownership of the funds involved in those transactions, the source being from the sale and distribution of marijuana.

8

4.    As a further part of the conspiracy, utilizing funds that were proceeds from the sale of marijuana, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, and others, used a nominee to lease and pay for, and/or assist in leasing and paying for, a condominium located at 513 E. Palmer, Detroit, Michigan, that the organization used on numerous occasions to receive and redistribute marijuana that was transported from Arizona to Detroit.

5.    As a further part of the conspiracy, DERRICK TARON WHITE, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT HALE, and others, utilized funds that were proceeds from the sale of marijuana to acquire, lease, and attempt to purchase a house located at 1108 W. Maddock Road, Phoenix, Arizona, which was used by the organization to receive and distribute marijuana in Arizona that was destined for redistribution in Detroit, and as a location to receive, handle and forward funds that had been transported from metropolitan Detroit and were being used to purchase more marijuana.

6.    As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, and others, utilized funds that were proceeds from the sale of marijuana to acquire, lease and/or rent, via a nominee, the residence located at 6987 W. Keim, Glendale, Arizona, which was a location utilized by DERRICK TARON WHITE, LESHOUN DEANDRE

9

BYRD, GREGORY A. JOHNSON, and others, to stay overnight and reside during their trips to metropolitan Phoenix to acquire marijuana.

7.     As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, JIMMY JOSEPH McWHERTER, NICHOLAS SCOTT HALE, KRISTIE McWHERTER, and others, took large amounts of cash derived from the organization's sale and distribution of marijuana and a) deposited the cash into various bank accounts or directed others to make such deposits; b) purchased cashier's checks and money orders with the cash or directed others to make such purchases; and/or c) electronically, or otherwise, transferred funds derived from the sale and distribution of marijuana or directed others to do so. These funds were then used to purchase assets, sometimes at costs in excess of $10,000.00, and pay personal expenses with the goal of concealing the true source, nature and ownership of the funds, which were derived from the sale and distribution of marijuana by members of the organization, as well as, at times, to avoid transaction reporting requirements.

(a)     As an example of such activity, several hundred thousand dollars of funds has been deposited and traced through accounts associated with DERRICK TARON WHITE, who owns and/or is affiliated with several different companies that have or had bank accounts during the timeframe of

10

the instant conspiracy, including among them, DTW Promotional Services, Inc., and DTW Property Investments, Inc.

In the approximate five-month period between August 2008 and December 2008, 74 postal money orders totaling more than $55,000.00 were deposited into Bank of America account number XXXXXX5236 in the name of DTW Promotional Services, Inc.  Review of the account for DTW Promotional Services, Inc., reveals what appear to have been only personal type expenditures drawn against the account, and no payments for any apparent business related expenses except for two checks drawn in March and April 2009 totaling $49,000.00, written by DERRICK TARON WHITE and made payable to DERRICK TARON WHITE, with memo line notations in each instance referring to wage payments for 2008.

Comparably, with regard to another account in a near-identical, approximate five-month period from July 28, 2008 to December 17, 2008, 138 postal orders totaling more than $99,000.00 in postal money orders was deposited into Chase Bank account number XXXXX0506 in the name of DTW Investment Services, Inc., with, again, two checks drawn in March and April 2009 totaling $49,000.00, written by DERRICK TARON WHITE and made payable to DERRICK TARON WHITE, with memo line notations in

each instance again referring to 2008 wage payments.

After eventually lying dormant for almost 2 ½ years, from January 2010 until June 2012, that same Chase Bank account received more than $148,000.00 in what appear to be structured cash deposits over an approximate 9-month period spanning from June 2012 to March 2013, with a significant portion of those deposits being made in and around Detroit, Michigan, and then withdrawn a short time later in California.

Meanwhile, in relation to yet a different, personal account of DERRICK TARON WHITE at Chase Bank, account number XXXXX8979, between May 2012 and April 2013 that account received more than $124,000.00 in what appear to have been structured deposits that were, again, primarily made in Michigan and withdrawn in California.

Through these various methods, DERRICK TARON WHITE was able to utilize cash proceeds deposited to these various accounts to pay his own personal expenses while concealing the true source and nature of the funds.

(b)    As a further example of utilizing various bank accounts to deposit and control funds derived from the sale and distribution of marijuana while concealing the true source, nature and ownership of the funds and avoiding transaction reporting requirements, several hundred thousand dollars of cash

has been deposited and/or traced through several different accounts associated with JIMMY JOSEPH McWHERTER and KRISTIE McWHERTER, who jointly own and/or are affiliated with two companies that have or had bank accounts during the timeframe of the instant conspiracy, including among them, Prototype Engineering Services, Inc., and The Lunch Box Co, and also maintained two joint personal checking accounts at Chase Bank.  Through their use of these accounts, JIMMY JOSEPH McWHERTER and KRISTIE McWHERTER have used large sums of cash proceeds deposited to these accounts to pay for their own personal expenses, while concealing the true source and nature of the funds.

In the approximate 3-year period between January 2007 and February 2010, over $900,000.00 in cash deposits were made into three of these Chase bank accounts, each in the name of Prototype Engineering Services, Inc., which were controlled and utilized by JIMMY JOSEPH McWHERTER and KRISTIE McWHERTER.  Almost the entirety of the more than $900,000.00 in cash deposits was deposited in structured amounts of less than $10,000.00 per transaction, and physically deposited into the accounts by JIMMY JOSEPH McWHERTER and KRISTIE McWHERTER.

As an example of the McWherter's use of the Prototype Engineering

13

Services bank accounts to pay for their personal expenses while concealing the true source and nature of funds, on July 5, 2008, KRISTIE McWHERTER issued a $73,000.00 check from a Prototype Engineering account, payable to JIMMY and KRISTIE McWHERTER with a notation on the memo line stating "2nd Qtr Bonus." The check was deposited, along with $8,000 in cash, that same day to the McWherter's joint personal account at Chase Bank. Also, on that same day, JIMMY McWHERTER obtained a cashier check from Chase Bank in the amount of $79,000.00 payable to Midwest Fiber Glass Pools for the purchase of a pool at the McWHERTER's primary personal residence in Bruce Township, Michigan.

As another example of the McWHERTER's use of Prototype Engineering Services bank accounts to pay for their personal expenses while concealing the true source and nature of funds, on July 18, 2009, KRISTIE McWHERTER issued a $10,000 check from a Prototype Engineering account payable to Spicer's Boat City with a notation on the memo line stating "money towards pontoon," which is believed to have been for the purchase of a pontoon boat for use at the McWHERTER's summer residence in Houghton Lake, Michigan.

In addition to such personal use of the funds deposited into the

14

business accounts under their control, portions of the deposits into these accounts were also used to make lease payments on a house in Phoenix, Arizona, located at 1108 W. Maddock Road, where marijuana was received and distributed by the WHITE organization, as well as to make lease payments on a Mercedes' Benz automobile leased and driven in Arizona by JIMMY JOSEPH McWHERTER in relation to drug trafficking, and to purchase vehicles and trailers utilized to transport marijuana and currency between Arizona and Michigan for the WHITE organization.  Particularly included among the latter such transactions are a series of cash deposits to the Prototype Engineering bank accounts, followed by the issuance of a $50,000.00 Prototype Engineering check by KRISTIE McWHERTER to JIMMY JOSEPH McWHERTER, which was deposited to the McWherter's personal bank account and was, in turn, followed by a $50,000.00 check written by KRISTIE McWHERTER from the McWHERTER's joint personal account in January 2010 payable to Beck's Custom Coach & Trailer, as a ten percent down payment for the purchase of a $500,000.00 Silver Crown Coach, which was a newer, larger, custom motor home that was to be utilized by the WHITE organization to transport additional amounts of cash and marijuana.

15

(c)   As a further example of utilizing various bank accounts to deposit and control funds derived from the sale and distribution of marijuana while concealing the true source, nature and ownership of the funds and avoiding transaction reporting requirements, JIMMY JOSEPH McWHERTER and NICHOLAS SCOTT HALE deposited and/or had others deposit on their behalf into the accounts of Prototype Engineering, portions of proceeds from the sale and distribution of marijuana that were to be paid to McWHERTER and HALE for their drug-trafficking roles, and, in turn, obtained checks from Prototype Engineering, as well as corresponding W-2 forms, purporting to be provided for legitimate work, rather than as a result of their participation in unlawful activity.

8.   As a further part of the conspiracy, DERRICK TARON WHITE, LESHOUN DEANDRE BYRD, GREGORY A. JOHNSON, TASHUN YVONNE WHITE, and others, would utilize and/or act as nominee purchasers or owners to acquire, purchase, and/or lease luxury vehicles and to conduct related financial transactions, while concealing the true source, nature and ownership of the funds involved in these transactions, the true source being the sale of marijuana, and in doing so, would, sometimes, also engage in monetary transactions involving the proceeds of a specified unlawful activity in an amount greater than $10,000.00, by,

16

through, or to a financial institution.

(a)     As an example, in August 2006, while concealing the true source, nature and ownership of the funds involved in the transaction, DERRICK TARON WHITE used a nominee to purchase or assist in purchasing a 2005 Aston Martin from an individual seller in the nominee's name for approximately $80,000.00.  Thereafter, in May 2008, DERRICK TARON WHITE used that same Aston Martin as a trade-in vehicle valued at $90,000.00 toward the purchase of a 2008 Porsche Cayenne for $97,597.00 in DERRICK TARON WHITE's name.  In doing so, DERRICK TARON WHITE concealed and disguised the source, origin, nature of ownership and control over the proceeds used to purchase the 2005 Aston Martin and the 2008 Porsche Cayenne.

(b)     As a further example, in August 2008, while concealing the true source, nature and ownership of the funds involved in the transaction, TASHUN YVONNE WHITE purchased or assisted in purchasing a 2008 Dodge Challenger from the car dealership Dupont Motors of Merryville, Indiana, for $50,500.00, paid at least $26,000.00 of that sum in cash, and titled it in her own name when she was actually purchasing the vehicle for the benefit and use of DERRICK TARON WHITE, who, in June 2009, later

17

used that same vehicle as a trade-in vehicle toward the purchase of a 2009 Porsche 911 Turbo from yet another car dealership, Jim Ellis Atlanta.  In doing so, DERRICK TARON WHITE and TASHUN YVONNE WHITE not only concealed the true source, nature and ownership of the funds involved in the purchase of the Dodge Challenger and the 2009 Porsche 911 Turbo, but also, each, participated in a monetary transaction involving the proceeds of specified unlawful activity in an amount greater than $10,000.00 with a car dealership.

(c)   As a further example, in August 2009, while concealing the true source, nature and ownership of the funds involved in the transaction, GREGORY A. JOHNSON purchased or assisted in purchasing a 2008 Lamborghini Gallardo from the car dealership Jim Ellis Atlanta for $168,000.00, paying approximately $48,400.00 of that sum in cash, and titled it in his own name when he was actually purchasing the vehicle for the benefit of DERRICK TARON WHITE, who coincidingly transferred title to his black 2009 Porsche 911 to Jim Ellis Atlanta, such that it could be, and was, used as a trade-in vehicle (with a trade-in allowance value of $120,000.00) toward the purchase of the 2008 Lamborghini Gallardo.  In doing so, DERRICK TARON WHITE and GREGORY A. JOHNSON not

18

only concealed the true source, nature and ownership of the funds involved in the purchase of the Lamborghini Gallardo, but also, each, participated in a monetary transaction involving the proceeds of specified unlawful activity in an amount greater than $10,000.00 with a car dealership.

(d)     As a further example, in January 2010, DERRICK TARON WHITE purchased a 2010 Porsche Panamera Turbo from an individual seller for $96,400.00 and titled the vehicle in DERRICK TARON WHITE's own name.  Records reveal that the individual seller had just purchased the vehicle from Jim Ellis Atlanta in December 2009, who had, in turn, also just acquired the vehicle in December 2009 from another car dealership for $137,952.00.

In June 2011, DERRICK TARON WHITE transferred title of the 2010 Porsche Panamera Turbo to TASHUN YVONNE WHITE, and in October 2012 the vehicle was sold to High Bid Trading Company, Inc., in exchange for a cashier's check in the amount of $82,500.00 payable to TASHUN YVONNE WHITE, with a notation on the check referencing the car's year, make and vehicle identification number (VIN).  Shortly thereafter, also in October 2012, TASHUN YVONNE WHITE transferred $82,500.00 to DERRICK TARON WHITE via a cashier's check, and in March 2013 DERRICK TARON WHITE leased a 2013 BMW M6 Coupe from McKenna

BMW in Norwalk, California, using $60,000.00 from the $82,500.00 cashier's check that he had received from TASHUN YVONNE WHITE as part of an initial lease down payment of $65,000.00.

(e)     As an example, in June 2009, while concealing the true source, nature and ownership of the funds involved in the transaction, LESHOUN DEANDRE BYRD used a nominee to purchase or assist in purchasing a 2004 BMW 645 from an individual seller in the nominee's name for approximately $17,000.00.  Thereafter, in September 2010, LESHOUN DEANDRE BYRD used that same 2004 BMW 645 as a trade-in vehicle valued at $20,000.00 toward the purchase of a 2009 BMW 750LI for $75,792.44 in BYRD's own name.  In doing so, BYRD concealed and disguised the source, origin, nature of ownership and control over the proceeds used to purchase the 2004 BMW 645 and the 2009 BMW 750LI.

Again, all in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)-(ii), and 1957.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 982(a)(1), 21 U.S.C. § 853, and 28 U.S.C. § 2461)

1.     The allegations contained in Count I to Count III of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), Title 21, United States Code, Section 853, and Title 28 United States Code Section 2461.

2.     Upon conviction of any of the offenses set forth in Count I or Count II of this Indictment, pursuant to Title 21, United States Code, Section 853, the convicted defendants shall forfeit to the United States all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set forth in this Indictment.

3.     Upon conviction of any of the offenses set forth in Count III of this Indictment, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461, the convicted defendants shall forfeit to the United States all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or

21

property traceable thereto, of the violations set forth in this Indictment.

4.    <u>Substitute Assets</u>:  Pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Title 28, United States Code, Section 2461(c), defendants shall forfeit any of their other property, real or personal, up to the value of property described above, if, by any act or omission of the defendant, the property subject to forfeiture:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred, sold to or deposited with a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Section 1963, Title 21, United States Code, Section 853(p), Title 18, United States Code, Section 982(b), Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

5.    <u>Money Judgment</u>.  Upon conviction of one or more violations alleged in this Indictment, the Government will seek a forfeiture money

22

judgment against the convicted defendants in an amount as is proved at trial in this matter representing the total amount of proceeds obtained as a result of defendants' offenses, for which defendants shall be jointly and severally liable.

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

BARBARA L. MCQUADE
United States Attorney

*s/Carl D. Gilmer-Hill*
CARL D. GILMER-HILL
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9585
Carl.Gilmer-Hill@usdoj.gov
CA161939

*s/Jonathan J.C. Grey*
JONATHAN J.C. GREY
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3220
(313) 226-9116
jonathan.grey@usdoj.gov
IL6292918

Case:5:15-cr-20040
Judge: Levy, Judith E.
MJ: Stafford, Elizabeth A.
Filed: 01-27-2015 At 04:45 PM
IND. USA V. SEALED MATTER (SO)

| United States District Court<br>Eastern District of Michigan | Criminal Case Cov |
|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v. <u>Derrick Taron White, et al</u>

**County where offense occurred :** <u>Wayne and elsewhere</u>

**Check One:**    ☒ **Felony**         ☐ **Misdemeanor**         ☐ **Petty**

   ✓ Indictment/____ Information --- **no** prior complaint.
   ____ Indictment/____ Information --- based upon prior complaint [Case number:                     ]
   ____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____      **Judge:** _____

   ☐ Original case was terminated; no additional charges or defendants.
   ☐ Corrects errors; no additional charges or defendants.
   ☐ Involves, for plea purposes, different charges or adds counts.
   ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 27, 2015          s/Carl D. Gilmer-Hill
<u>    Date    </u>          Carl D. Gilmer-Hill
                                    Assistant United States Attorney
                                    211 W. Fort Street, Suite 2001
                                    Detroit, MI  48226-3277
                                    Phone: 313-226-9585
                                    Fax:    313-226-5464
                                    E-Mail address: carl.gilmer-hill@usdoj.gov
                                    Attorney Bar #: CA161939

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.                04/13